## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **RESOURCE STRATEGIES, LLC, on behalf of itself and others similarly situated; ATIC LIMITED PARTNERSHIP, on behalf of itself and others similarly situated; and BRIGUNA, LLC, on behalf of itself and others similarly situated,** | * * * * | |
| **Plaintiffs,** | * | **Case No. _____** |
| **vs.** | * | |
| | * | |
| **ESCAMBIA OPERATING CO., LLC; ESCAMBIA ASSET CO., LLC; BLUE DIAMOND ENERGY, INC.; and THOMAS L. SWAREK,** | * * * | |
| **Defendants.** | * | |

## COMPLAINT

COME NOW Plaintiffs, Resource Strategies, LLC, on behalf of itself and on behalf of others similarly situated, ATIC Limited Partnership, on behalf of itself and on behalf of others similarly situated, and Briguna, LLC, on behalf of itself and on behalf of others similarly situated (collectively "Plaintiffs"), and for their Complaint against the above captioned Defendants in this matter, state as follows:

1

## PARTIES

1.     Plaintiff Resource Strategies, LLC ("Resource Strategies") is a Utah limited liability company, whose members are comprised of (1) The Erie County Investment Co., an Ohio Corporation with its principal place of business in Colorado, and (2) Golden Legacy Investments, LLC, a Colorado limited liability company whose members are individuals residing in Colorado, New Mexico, Montana, and Florida. Resource Strategies is authorized to do business in Alabama and owns property and/or property rights in Escambia County, Alabama that are the subject of this action.

2.     Plaintiff ATIC Limited Partnership ("ATIC") is a Delaware limited partnership, whose general partner is Rudy Resources Limited Partnership.  Rudy Resources Limited Partnership is an Ohio limited partnership, whose general partner is RRGP, LLC.   RRGP, LLC is an Ohio limited liability company, whose members reside in Kentucky and Florida.  ATIC is authorized to do business in Alabama and owns property and/or property rights in Escambia County, Alabama that are the subject of this action.

3.     Plaintiff Briguna, LLC ("Briguna") is a Texas limited liability company, whose sole member is a citizen of Texas.  Briguna is authorized to do business in Alabama and owns property and/or property rights in Escambia County, Alabama that are the subject of this action.

2

4.    On information and belief, Defendant Escambia Operating Co., LLC ("Escambia Operating") is a Texas limited liability company, whose sole member is Defendant Blue Diamond Energy, Inc. ("Blue Diamond").  Blue Diamond is a Mississippi corporation with its corporate headquarters in Mississippi.  Escambia Operating operates properties in Escambia County, Alabama that are the subject of this action.

5.    On information and belief, Defendant Escambia Asset Co., LLC ("Escambia Asset") is a Texas limited liability company, whose sole member is Blue Diamond.  Escambia Asset owns property and/or property rights in Escambia County, Alabama that are the subject of this action.

6.    On information and belief, Defendant Thomas L. Swarek ("Swarek") is an individual resident of Gulfport, Mississippi.  Swarek is the principal of Escambia Operating, Escambia Asset, and Blue Diamond and has operated them as a mere adjunct or instrumentality.  He has knowingly and willfully directed, aided and abetted the improper actions of said Defendants in Escambia County, Alabama complained of herein.

## JURISDICTION AND VENUE

7.    This Complaint alleges claims on behalf of a class or classes in excess of 100 members and seeking damages in excess of $5,000,000.00 in the aggregate.

3

As such, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).  Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in Escambia County, Alabama and because all relevant property at issue in this action is located in said county.  Escambia County, Alabama is located within this judicial district and is served by the Mobile, Alabama Courthouse location.

## GENERAL BACKGROUND

8.     This case involves the operation of several oil and gas wells in the Big Escambia Creek, Fanny Church, Flomaton, North Fanny Church, South Burnt Corn Creek, and West Appleton Fields (the "Subject Wells"), as established by the Alabama Oil and Gas Board and located in Escambia County, Alabama.  A list of the Subject Wells is attached hereto as Exhibit "A."  Production from the Subject Wells is piped to the Big Escambia Creek Plant (the "BEC Plant"), where it is then processed into marketable products such as oil, gas condensate, residue gas (methane), pentane, butane, propane and sulfur.

9.     Most oil and gas well arrangements, including the subject arrangement, are comprised of the following parties:

(1) Mineral owners, who lease their minerals in exchange for cash consideration and the right to receive future royalty payments from the minerals produced.

4

These mineral owners sometimes assign their right to receive royalties (i.e. "Royalty Interests") to other parties. The mineral owners and any assignees of their Royalty Interests are hereinafter collectively referred to as "Royalty Interest Owners." Plaintiff ATIC is a Royalty Interest Owner in the Subject Wells.

(2) Leasehold owners, who lease the minerals from the mineral owners. These leasehold interests are often split into fractional, undivided interests and assigned to other parties desiring to develop the mineral interests. The owners of these leasehold interests, commonly known as "Working Interests," actively pay the costs necessary to develop the mineral interests and own all production and revenues therefrom, less taxes and royalties due to the Royalty Interest Owners. The owners of these Working Interests are hereinafter referred to as "Working Interest Owners". Plaintiff Resource Strategies is a Working Interest Owner in the Subject Wells and BEC Plant. Defendant Escambia Asset is also a Working Interest Owner in the Subject Wells and BEC Plant.

(3) Sometimes, as in the current case, a Working Interest Owner will assign its right to receive revenues, free of the obligation of costs, to other parties. These assigned revenue interests are commonly known and referred to herein as "Overriding Royalty Interests" and the assignees thereof as "Overriding Royalty

Interest Owners." Plaintiff Briguna is an Overriding Royalty Interest Owner in the Subject Wells.

(4) an "Operator," who is contracted by the Working Interest Owners to actually perform the drilling, development and administration of the well on behalf of the "joint account" (i.e. on behalf of the Working Interest Owners). Defendant Escambia Operating is the Operator of most of the Subject Wells and the BEC Plant.

10.    The BEC Plant and many of the Subject Wells have been in operation since the 1970s. New wells have been drilled and dry or depleted wells have been plugged, but the BEC Plant has consistently processed and sold products from the Subject Wells since its construction in the 1970s. In turn, the Subject Wells have generated a steady stream of revenue to hundreds of owners, most of whom are residents of Escambia County, Alabama, that have come to depend on the income provided by the Subject Wells.

11.    Over time, several Operators have operated the BEC Plant and Subject Wells. For the last several years, Defendant Escambia Operating has operated the BEC Plant and most of the Subject Wells. A small number of the Subject Wells are operated by other Operators, although production from all of the Subject Wells is piped

to the BEC Plant for processing and sale to third-party buyers.  The list of Subject Wells in Exhibit A states the Operator name for each well.

12.    Escambia Operating owns no interest in minerals produced by the Subject Wells and processed at the BEC Plant.  Rather, Escambia Operating is a contract Operator, whose rights to operate the Subject Wells are governed by separate operating agreements (also known as joint operating agreements or JOAs (hereinafter the "Well JOAs")) covering the operation of each well.  A list of the relevant Well JOAs is attached hereto as Exhibit "B".  Escambia Operating is the designated successor Operator under the Well JOAs.  Escambia Operating's right to operate the BEC Plant is governed by a March 1, 1973 Construction and Operating Agreement, as amended, between Mallard Exploration, Inc. and Amax Petroleum Corporation et al. (hereinafter the "C&O Agreement").  Escambia Operating is the designated successor Operator under the C&O Agreement.

13.    The Well JOAs and the C&O Agreement, as well as a consistent history and course of dealing formed over the years, establish the relationship between the Operator and the Working Interest Owners regarding all facets of operations concerning the Subject Wells and the BEC Plant, including ownership of the well production and revenues therefrom.  At the core of the Operator/Working Interest Owner relationship is the understanding that the Operator operates the properties on

7

behalf of and for the benefit of the Working Interest Owners, who are then entitled to ownership of production from the Subject Wells and all proceeds from the sale thereof, less taxes and lease burdens such as royalties. The Operator is entitled to reimbursement of operating costs that it incurs for the "joint account" (i.e. for the Working Interest Owners' benefit), although the Operator's right to reimbursement is subject to compliance with strict accounting and billing procedures set forth in the Well JOAs and the C&O Agreement. The Operator is under duties imposed by the agreements to conduct operations in a good and workmanlike manner and to keep each Working Interest Owner fully informed as to all matters of importance concerning operations.

14.     The Operator's purpose is not to make a profit from operating properties. Rather, in many oil and gas arrangements, as in the subject arrangement, the Operator will also own a Working Interest through an affiliated company to share in revenues from production. In this case, Defendant Escambia Asset is the Operator's affiliated Working Interest Owner as both entities, on information and belief, are owned by Defendant Blue Diamond. Escambia Asset owns the majority of the Working Interest in the Subject Wells and in the BEC Plant.

## PURCHASE OF ESCAMBIA OPERATING AND ESCAMBIA ASSET

15.     Until approximately January 2021, Escambia Operating and Escambia Asset were owned by Grizzly Energy, LLC ("Grizzly").  During Grizzly's ownership, the Working Interest Owners, Royalty Interest Owners, and Overriding Interest Owners experienced no significant problems with the operations of the Subject Wells and the BEC Plaint.  Operating expenses were timely billed and revenues and royalties were timely and properly paid.  However, Grizzly filed for bankruptcy, and in January 2021, was forced to sell its interests in Escambia Operating and Escambia Asset, which were purchased by Blue Diamond.

16.     During the first three months of 2021, Grizzly assisted Blue Diamond, as the new owner of Escambia Operating, with the operations of the Subject Wells and the BEC Plant.  With Grizzly's assistance, expenses were timely billed and revenues and royalties were timely and properly paid.  However, in April 2021, when Grizzly began turning over day-to-day operations to Blue Diamond, Escambia Operating began significant failings and misconduct in operations, which failings and misconduct have continued through today.

## TAKE-IN-KIND DELIVERIES

17.     Under the Well JOAs and C&O Agreement, each Working Interest Owner has the absolute right to take its share of production "in-kind" and sell the production on its own terms.  If the Working Interest Owner fails to take its portion in-kind, then

the Operator has the right to sell production for a reasonable price and pay the revenues therefrom to the Working Interest Owner.

18.     For decades, a group of Working Interest Owners, including Plaintiff Resource Strategies, took their share of production in-kind, sold it, and received all revenues therefrom.  These working interest owners (hereinafter the "Take-in-Kind Owners"), acting through its agent DAMSCO, would then pay all severance taxes for their share of production and distribute royalties to their Royalty Interest Owners.

19.     Beginning in April 2021, Escambia Operating began efforts to prevent the Take-in-Kind Owners from obtaining their share of production despite the clear language of the Well JOAs and C&O Agreement authorizing Working Interest Owners to do so and despite the fact that the Take-in-Kind Owners had been taking their share of production without incident for decades.

20.     In April, May and June of 2021, Escambia Operating prevented the Take-in-Kind Owners from receiving their share of residue gas from the BEC Plant.

21.     In July of 2021, Escambia Operating again prevented the Take-in-Kind Owners from receiving their share of residue gas from the BEC Plaint.  Escambia Operating also prevented the Take-in-Kind Owners from receiving their full share of Butane, Propane and Sulfur by denying access to trucks intending to transport the products to the Take-in-Kind Owners' purchasers.  Escambia Operating further refused

to allow any deliveries of the Take-in-Kind Owners' share of gas condensate and pentane by re-routing the products from a pipeline used by the Take-in-Kind Owners to Escambia Operating's trucks.

22.    During the months of April – July 2021, the Take-in-Kind Owners notified Escambia Operating several times that its refusal to allow take-in-kind deliveries was a clear violation of the Well JOAs and BEC Plant.  Nevertheless, Escambia Operating continued to deny the Take-in-Kind Owners their rights as directed by its principal, Swarek.   Moreover, Escambia Operating has failed to account for the wrongfully withheld production.  In particular, Escambia Operating sold the Take-in-Kind Owners' share of production, but has not released to them any details of the sales and has not remitted to them any revenue from the sales, which revenue is estimated to be hundreds of thousands of dollars.  In turn, the Take-in-Kind Owners have been unable to pay royalties and revenues due to their Royalty Interest Owners and Overriding Royalty Interest Owners.

## POST TAKE-IN-KIND DELIVERIES

23.    To assist Escambia Operating in correcting its accounting and other deficiencies, beginning with the production month of August 2021, the Take-in-Kind Owners were forced to stop taking their share of production in-kind and instead allowed Escambia Operating to market all production from the Subject Wells as long

as Escambia Operating properly distributed the revenues therefrom to each individual Working Interest Owner, Royalty Interest Owner, and Overriding Interest Owner.

24.    To facilitate this process, DAMSCO, as agent for the former Take-in-Kind Owners, provided Escambia Operating with ownership "decks" for all Working Interests, Royalty Interests, and Overriding Royalty Interests associated with the Take-in-Kind group.  Ownership decks are well-by-well spreadsheets showing each owner's name, address, tax id information, and percentage ownership of the revenues generated by the well.  Once an ownership deck is established, the interests do not change unless a particular interest is legally transferred, either in whole or in part, such as by deed, testate devise, or intestate succession.  The Take-in-Kind ownership decks were accurate and constantly updated by DAMSCO in the event of such ownership change. DAMSCO provided the Take-in-Kind ownership decks to Escambia Operating in August of 2021, and at that time, DAMSCO was not aware of any ownership changes not already incorporated in the decks.

25.    Since August 2021 and continuing to date, Escambia Operating has sold all production from the Subject Wells.  Despite having all ownership decks since August 2021, Escambia Operating has paid no revenue to the Working Interest Owners or Overriding Royalty Interest Owners in the former DAMSCO group.  Further, on information and belief, Escambia Operating has made only partial distributions of

revenue to Royalty Interest Owners, although these payments were not accompanied by any information concerning the details of the sale and deduction of severance taxes as required by Ala. Code § 9-17-33.

## REVENUE DUE TO NON-TAKE-IN-KIND PARTIES

26.     Escambia Asset owns the majority of Working Interests in the Subject Wells and BEC Plant.  While the former Take-in-Kind Owners comprise most of the minority Working Interest Owners, there are other minority Working Interest Owners who fall outside of the Take-in-Kind group and whose share of production has, for all relevant periods, been sold by Escambia Operating.  In addition, some Working Interest Owners, like Resource Strategies, own interests that fall within the Take-in-Kind Group and some interests that fall outside the Take-in-Kind Group and have been handled by Escambia Operating.  Like the interests of the Take-in-Kind Owners, the revenues attributable to the interests falling outside of the Take-in-Kind group (including revenues attributable to Escambia Asset) are subject to the payment of royalties and overriding royalties.

27.     Prior to April 2021, for such interests falling outside of the Take-in-Kind Group, Escambia Operating would pay revenues directly to Working Interest Owners, Royalty Interest Owners and Overriding Royalty Interest Owners.  Escambia Operating would make all such payments pursuant to ownership decks that the Operator had

13

maintained for decades, and there were no significant issues with the payments made by the Operator.

28.    Beginning in April 2021, however, Escambia Operating has only made partial payments concerning these interests falling outside of the Take-in-Kind group. Escambia Operating has failed or refused to make full payment to Working Interest Owners, Royalty Interest Owners, and Overriding Royalty Interest Owners despite having complete and accurate ownership decks concerning the non-Take-in-Kind interests and despite having title opinions and division orders with specific payment instructions.  More recently, Escambia Operating has refused to pay any amounts to Working Interest Owners, and while some partial payments have been made to a select few Royalty Interest Owners and Overriding Royalty Interest Owners, others have received nothing.  Moreover, the partial payments made by Escambia Operating were not accompanied by information required by Ala. Code § 9-17-33.

29.    On information and belief, Escambia Operating has diverted unpaid revenues to Escambia Asset, Blue Diamond and Swarek, and has otherwise dispersed the revenues in violation of the Well JOAs and the C&O Agreement.

## EXPENSE ACCOUNTING

30.    The Well JOAs and C&O Agreement each contain strict guidelines governing the Operator's expenditures on behalf of the joint account.  The agreements

14

require that normal expenses required to operate the properties are to be paid by the Operator, and then billed by the Operator to relevant Working Interest Owner in the following month. These bills are commonly known as joint interest billings ("JIBs"). The Working Interest Owner must then pay its pro-rata portion of the expenses set forth in the JIB within a certain time, usually 15 days. The agreements further allow a process whereby a Working Interest Owner can object to an expense set forth in a JIB.

31.     If a Working Interest Owner fails to pay a JIB without adequate reason, the Operator then has the right to recover the JIB amount from any revenue due to the non-paying Working Interest Owner. However, this process, commonly referred as "JIB-netting," is only available to an Operator after the Operator has submitted a properly supported JIB and the Working Interest Owner fails to timely pay it.

32.     On information and belief, Escambia Operating has continually incurred expenses that it claims are for the joint account, but has not sent a JIB to any Working Interest Owner since March of 2021. Escambia Operating has failed to send JIBs despite having complete and accurate "Expense Decks" that it has employed for several years. As a result, the Working Interest Owners have little knowledge concerning the nature of expenses being incurred for operations and whether such expenses are necessary or reasonable. Moreover, Escambia Operating has been improperly JIB-netting the Working Interest Owners' revenues to reimburse itself for

such expenses without having provided the Working Interest Owners with JIBs and the opportunity to pay or object.

33.    Under the Well JOAs and C&O agreement, the Operator may also undertake projects that are outside normal day-to-day operations and that carry a higher cost.  In the event that such a project is expected to exceed a certain threshold cost set forth in the applicable agreement – anywhere from $7,500 to $100,000 based on the agreement – the Operator must notify the Working Interest Owners and allow them the opportunity to either consent or not consent to the project.  A party that "non-consents" may lose its right to receive revenues until its pro-rata share of the expense is recovered, plus an additional portion to compensate the consenting Working Interest Owners for the risk they incurred.

34.    On information and belief, Escambia Operating has undertaken projects that exceed the threshold expense amount set forth in the Well JOAs and C&O agreement.  Escambia Operating has provided the Working Interest Owners with no prior notice of these proposed expenses and no opportunity to consent or non-consent.  Instead, Escambia Operating, without approval, has unilaterally undertaken these projects and used the Working Interest Owners' money to pay for the projects.

## LIENS, LITIGATION AND TAX OBLIGATIONS

35.    The C&O Agreement requires that the Operator keep plant property and equipment free and clear of all liens and encumbrances and pay all relevant taxes related thereto.  The C&O Agreement further requires that if the Operator sells any production from the plant (as opposed to owners taking-in-kind), then the Operator shall pay all severance taxes on behalf of the owners of the production.  Finally, the C&O Agreement authorizes the Operator to settle any litigation, without approval from the Working Interest Owners, if the amount of the settlement is $5,000 or less, but if the settlement amount is over $5,000, Working Interest Owner approval is required.  If litigation costs and fees are to be incurred, such costs may only be billed to the joint account if agreed upon by a majority of Working Interest Owners.

36.    In 2021, at least one mechanics and materialmens' lien was filed against the BEC Plant due to the Escambia Operating failing to pay a vendor.  Also in 2021, at least two lawsuits by vendors were filed against Escambia Operating.  On information and belief, Escambia Operating settled one case by making payment in excess of $100,000 to the plaintiff therein.  Such payment was made without notice to the Working Interest Owners and funded with the Working Interest Owners' revenue without their approval.  As to the other case, Escambia Operating has hired attorneys and incurred fees without the approval of the Working Interest Owners.  Such fees have been paid with Working Interest Owners' revenue.

37.    On information and belief, Escambia Operating has for several months failed to timely remit monthly severance tax returns and payments to the Alabama Department of Revenue.  Due to this, it has placed all owners' interests at risk of lien by the State of Alabama.  Moreover, Escambia Operating has incurred significant interest and penalties that it has improperly charged against owner revenue.  Escambia Operating has provided no severance tax information to the owners as it is required to do so by Ala. Code § 9-17-33.

38.    On information and belief, Escambia Operating has failed to pay 2021 real and personal property taxes to the Escambia County, Alabama, Revenue Commissioner concerning the BEC Plant property and equipment.  As a result, the BEC Plant property and equipment is currently subject to a lien for unpaid taxes.  Moreover, Escambia Operating is improperly assessing the Plant property and equipment in the name of Escambia Asset, rather than the Operator as required by the C&O Agreement.

## MAINTENANCE OF PLANT EQUIPMENT

39.    The C&O Agreement requires that Escambia Operating conduct operations in a good and workmanlike manner, including properly maintaining equipment, and that Escambia Operating keep each Working Interest Owner fully informed as to all matters of importance concerning operations.

40.     On information and belief, Escambia Operating has failed to properly maintain equipment at the BEC Plant related to flaring and emissions.   Such failure has resulted in emissions of Sulfur Dioxide that exceed the Plant's air permit. Escambia Operating has further failed to adequately address these maintenance issues, which has caused Escambia Operating to shut-down all processing at the Plant for an extended period of time.  During this extended period of time, no production will be processed and sold and the Operator will incur unnecessarily high expenses to bring the Plant back on-line due to its failure to properly plan.  Moreover, because all wells have to be shut-in while maintenance is conducted, there is significant risk that the wells may not produce as effectively as before.

41.     Escambia Operating has given no notice to Working Interest Owners of this major development and no notice and opportunity to vote on proposed costs to bring the Plant back on-line.

## STRUCTURE AND RELATIONSHIP REGARDING DEFENDANTS

42.     On information and belief, Swarek is the principal member, shareholder or officer of Escambia Operating, Escambia Asset and Blue Diamond, and he has operated them as a mere adjunct or instrumentality for his own personal benefit.

43.     Swarek has directed the wrongful actions of Escambia Operating, Escambia Asset and Blue Diamond and has received and continues to receive the

benefits gained by said Defendants, all while using said Defendants as a shield from his own personal liability.

44.    Other officers, directors, managers, members and shareholders overlap substantially among Escambia Operating, Escambia Asset and Blue Diamond.

45.    Escambia Operating, Escambia Asset and Blue Diamond have failed to maintain the requisite corporate formalities.

46.    The monies obtained by the Defendants have been transferred amongst the Defendants and/or commingled among them.

47.    It is necessary to disregard the corporate separateness of the Defendants to promote justice and protect the rights of the parties herein.

## CLASS ALLEGATIONS

48.    Resource Strategies brings this action on behalf of itself and on behalf of all Working Interest Owners, except Escambia Asset, that own or owned Working Interests in the Subject Wells or in the BEC Plant since April 1, 2021 (the "Working Interest Owner Class").

49.    Resource Strategies also brings this Complaint on behalf of a subclass of Working Interest Owners comprised of all former Take-in-Kind Owners, except Escambia Asset, that were denied their right to take-in-kind their full share of

production from the BEC Plant for the time period April 1, 2021 through July 31, 2021 (the "Take-in-Kind Subclass").

50.    ATIC brings this action on behalf of itself and on behalf of all Royalty Interest Owners that own or owned Royalty Interests in the Subject Wells since April 1, 2021 (the "Royalty Interest Owner Class").

51.    Briguna brings this action on behalf of itself and on behalf of all Overriding Royalty Interest Owners that own or owned Overriding Royalty Interests in the Subject Wells since April 1, 2021 (the "Overriding Royalty Interest Owner Class").

52.    The exact numbers and identities of all Class members and Subclass members are readily ascertainable from the records of Defendants and the former Take-in-Kind Owners, by and through its former agent DAMSCO.

53.    All causes of action herein have been brought and may be properly maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the proposed classes are easily ascertainable.

(a)    Members of each Class and Subclass are so numerous that individual joinder of all members would be impracticable.

(b)    Common questions of law and fact exist as to all members of each Class and Subclass, and those questions predominate over any questions which

might affect members individually. Those common questions of law and fact include, for example, whether the Defendants have improperly failed to distribute revenues to members of each Class and Subclass; whether Defendants have withheld, transferred or utilized said revenues improperly; whether Defendants converted production owned and deliverable to the members of the Take-in-Kind Subclass; and whether Escambia Operating has violated statutory payment requirements. Operative agreements such as leases, Well JOAs and the C&O Agreement are form-based documents with standard language that are uniformly applied among the Classes and Subclass. Moreover, Escambia Operating has uniform division orders with specific instructions on how each party is to be paid.

(c)     Plaintiffs' claims are typical of the claims of members of the Class and/or Subclass that each represents. Plaintiffs and the members of the Class and/or Subclass that each represents sustained damages arising out of Defendants' common course of conduct complained herein.

(d)     Plaintiffs will fairly and adequately protect the interests of members of the Classes and Subclass they represent since neither have interests which are adverse to the interests of the absent class members and since

22

Plaintiffs have retained counsel who have substantial knowledge of oil and gas matters and experience and success in the prosecution of class actions.

(e)    Defendants have acted or refused to act on grounds generally applicable to the Classes and Subclass, thereby making appropriate final injunctive and declaratory relief with respect to each Class and the Subclass as a whole.

(f)    A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members would be impracticable.  Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Furthermore, since many class members' individual claims for damages are modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of the Class to redress the wrongs done to them.  An important public interest will be served by addressing the matter as a class action, substantial economies to the litigants and to the judicial system will be

realized, and the potential for inconsistent or contradictory judgments will be avoided.

## FIRST CAUSE OF ACTION
### Breach of Contract
### (All Classes, except the Subclass, Against Escambia Operating and Swarek)

54.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 53 hereinabove.

55.    If a Working Interest Owner fails to take its share of production in-kind, then Escambia Operating has the right to sell such share of production on reasonable terms.  Escambia Operating is then required to distribute the sales proceeds, less applicable severance taxes, to each of the Working Interest Owners, Royalty Interest Owners or Overriding Royalty Interest Owners whose production was sold, or Escambia Operating may distribute the proceeds to the Working Interest Owners for further royalty distribution.

56.    The C&O Agreement further requires that Escambia Operating conduct operations in a good and workmanlike manner and keep each Working Interest Owner fully informed as to all matters of importance concerning operations, keep plant property and equipment free and clear of all liens and encumbrances and pay all relevant taxes related thereto, make all severance tax filings and pay severance taxes on

production that it markets, and to not incur litigation expenses and settlement payments unless authorized by the Working Interest Owners.

57.     The interests of all Working Interest Owners in the Subject Wells and in the BEC Plant are subject to the Well JOAs and the C&O Agreement.  All Royalty Interest Owners and Overriding Royalty Interest Owners are intended beneficiaries of the Well JOAs and C&O Agreement.

58.     Escambia Operating and its alter-ego Swarek have breached the Well JOAs and C&O Agreement in several ways, including: by refusing to distribute to Plaintiffs and all members of the Classes revenues from production sold by Escambia Operating; by misusing and misappropriating revenues owned by the Plaintiffs and members of the Classes; by operating the Subject Wells and BEC Plant in a manner that is completely contrary to industry accepted good and workmanlike standards; by allowing mechanics and materialmens' liens and ad valorem tax liens to encumber the BEC Plant property and equipment; by incurring unauthorized litigation expenses and settlements on behalf of the joint account; by failing to make severance tax returns and pay severance taxes; and by failing to properly maintain the BEC Plant.

59.     The breaches by Escambia Operating and Swarek are continuous and have not been cured despite having been on notice of its operating deficiencies for several months and despite having been admonished by the Alabama Oil and Gas Board.

25

60.     Plaintiffs and all members of the Classes have been damaged as a result of Escambia Operating's breaches.

## SECOND CAUSE OF ACTION
**Breach of Contract**
**(Take-in-Kind Subclass Against Escambia Operating and Swarek)**

61.     Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 60 hereinabove.

62.     The C&O Agreement and Well JOAs provide that each Working Interest Owner has the absolute right to take its share of production in-kind.

63.     If a Working Interest Owner opts to take its share of production in-kind, then Escambia Operating cannot deny its right to do so.

64.     Escambia Operating and its alter-ego Swarek breached the Well JOAs and C&O Agreement by refusing to allow Resource Strategies and the other members of the Take-in-Kind Subclass to take their full share of production in kind for the time periods of April 1, 2021 through July 31, 2021.

65.     Resource Strategies and all members of the Take-in-Kind Subclass have been damaged as a result of the breaches by Escambia Operating and Swarek.

## THIRD CAUSE OF ACTION
**Declaratory Judgment**
**(All Classes and the Subclass Against Escambia Operating)**

66.    Plaintiffs incorporate by reference all allegations of Paragraphs 1 through 65 hereinabove.

67.    Escambia Operating has denied and continues to deny Plaintiffs and all members of the Classes and Subclass their full share of proceeds from the sale of production from the Subject Wells in violation of the Well JOAs and the C&O Agreement.

68.    Escambia Operating has refused to acknowledge the contractual take-in-kind rights of Resource Strategies and the members of the Take-in-Kind Subclass under the Well JOAs and the C&O Agreement for the time period of April 1, 2021 through July 31, 2021.

69.    Escambia Operating further has spent and continues to spend said proceeds in a manner unauthorized by the Well JOAs and the C&O Agreement, and Escambia Operating otherwise has operated and continues to operate the Subject Wells and BEC Plant in a manner unauthorized by said agreements.

70.    There is a justiciable controversy among the parties that must be addressed by the Court in order for Escambia Operating to adequately comply with its obligations as Operator of the Subject Wells and the C&O Agreement.

### FOURTH CAUSE OF ACTION
**Accounting**
**(All Classes and the Subclass Against All Defendants)**

71.     Plaintiffs incorporate by reference the allegations of Paragraph 1 through 70 hereinabove.

72.     Escambia Operating is under a duty to account for proceeds from the sale of oil, gas or other products produced by the Subject Wells and sold on behalf of Plaintiffs and all members of the Classes and Subclass.

73.     Escambia Operating and its alter-ego Swarek have wrongfully withheld, misused and diverted said proceeds to Escambia Asset, Blue Diamond and Swarek and have failed to keep Plaintiffs and all members of the Classes and Subclass adequately informed as to production, sales, distribution, expenses and severance taxes applicable to the Subject Wells and the BEC Plant.

74.     It is unjust to allow Defendants to continue to withhold, misuse and divert said proceeds and to withhold information which is necessary to protecting the parties' legal interests in the Subject Wells and in the BEC Plant.

75.     Plaintiffs and all members of the Classes and Subclass have been damaged and will continue to be damaged by Defendants' wrongful conduct.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(All Classes and the Subclass Against All Defendants)**

76.    Plaintiffs incorporate by reference the allegations of Paragraph 1 through 75 hereinabove.

77.    Defendants hold revenues which in equity and good conscience belong to Plaintiffs and the members of the Classes and Subclass.

78.    Defendants have been unjustly enriched to the detriment of Plaintiffs and the members of the Classes and Subclass.

## SIXTH CAUSE OF ACTION
### Conversion
### (Take-in-Kind Subclass Against all Defendants)

79.    Plaintiffs incorporate by reference the allegations of Paragraph 1 through 78 hereinabove.

80.    Defendants, in concert with one another, consciously and/or deliberately engaged in oppression, fraud, wantonness, and/or malice by denying Resource Strategies and the members of the Take-in-Kind Subclass their rightful share of production for the time period of April 1, 2021 through July 31, 2021.

81.    Despite being notified of the Take-in-Kind Owners' right to their share of production, Defendants continued to wrongfully exercise dominion and control over the production and sold the production for their own improper use and benefit.

82.    Resource Strategies and the members of the Take-in-Kind Subclass have been damaged as a result of the Defendants' intentional conversion.

## SEVENTH CAUSE OF ACTION
### Violation of Ala. Code §§ 9-17-2 and 9-17-11
### (All Classes and the Subclass Against all Defendants)

83.    Plaintiffs incorporate by reference the allegations of Paragraph 1 through 82 hereinabove.

84.    The purpose of Alabama's oil and gas statutes is set forth in Ala. Code § 9-17-2, which provides: "The prevention of waste of oil and gas and the protection of correlative rights are declared to be in the public interest.  The purpose of this article is to prevent such waste and to protect correlative rights."

85.    Ala. Code § 9-17-11 further states that "Waste of oil or gas as defined in this article is hereby prohibited."   Waste is defined in Ala. Code § 9-17-1(20) to include:

a.    The inefficient, excessive, or improper use or dissipation of reservoir energy and the locating, spacing, drilling, equipping, operating, or producing of any oil or gas well or wells in a manner which results or tends to result in reducing the quantity of oil or gas ultimately to be recovered from any pool in this state.

b.    The inefficient storing of oil and the locating, spacing, drilling, equipping, operating, or producing of any oil or gas well or wells in a manner causing or tending to cause unnecessary or excessive surface loss or destruction of oil or gas.

…

86.    Escambia Operating, knowingly and willfully, aided and abetted by Defendants Escambia Asset, Blue Diamond, and Swarek, has wantonly caused waste

and violated the correlative rights of all members of the Classes and Subclass by refusing to distribute to them their share of production from the Subject Wells; by refusing to allow Working Interest Owners to take their production in-kind; by improperly transferring and misusing revenues; by failing to properly maintain the BEC Plant; and by allowing liens and penalties to accrue.

## EIGHTH CAUSE OF ACTION
### Violation of Ala. Code §§ 9-17-33
### (All Classes and the Subclass Against all Defendants)

87.    Plaintiffs incorporate by reference the allegations of Paragraph 1 through 86 hereinabove.

88.    Ala. Code § 9-17-33(c) requires that "proceeds derived from the sale of oil or gas production from any oil or gas well shall be paid to the persons legally entitled thereto, commencing no later than six months after the date of the first sale, and thereafter no later than 60 days after the end of the calendar month within which subsequent production is sold."

89.    The Subject Wells have been in production for several years.

90.    Ala. Code § 9-17-33(d) states that "[a]ny first purchaser of production or operator and/or owner of the right to drill substituted for the first commercial purchaser as provided herein, that violates this section shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of the proceeds plus

interest at the rate of 12 percent per annum, the interest accruing from the date at which the proceeds were due as specified herein."

90.     Section 9-17-33(b) requires that payments be accompanied by specific production and sales information, including the name of the applicable well or wells, the month of production represented by the payment, the quantity of products sold, the price realized by the seller, the amount of severance taxes deducted from the owner's share of production, the value of the owner's share before and after the deduction, and the owner's decimal ownership interest in the production.

91.     Escambia Operating, knowingly and willfully, aided and abetted by Escambia Asset, Blue Diamond, and Swarek, has violated Ala. Code § 9-17-33 by failing to timely distribute revenues to the Plaintiffs and members of the Classes and Subclass and by failing to include with payments the information required by § 9-17-33(b).  Enforcement of § 9-17-33 is necessary to insure compliance with ongoing payment obligations.

## NINTH CAUSE OF ACTION
### Injunction
### (All Classes and the Subclass Against All Defendants)

92.     Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 91 hereinabove.

93.     Pursuant to the terms of the Well JOAs and C&O Agreement, historical course of dealing, and principles of equity, Escambia Operating currently holds and will hold in the future proceeds from the sale of oil, gas and other production that belongs to Plaintiffs and the members of the Classes and Subclass.  Escambia Operating has no right to withhold such proceeds from Plaintiffs and the members of the Classes and Subclass, but rather is required to distribute such proceeds to the owners thereof.

94.     Escambia Operating is further required by Ala. Code § 9-17-33 to timely distribute such proceeds to Plaintiffs and the members of the Classes and Subclass and to accompany said payments with specific information, including amount of production, terms of sales, and severance tax deductions.

95.     Escambia Operating, acting in concert with Escambia Asset, Blue Diamond, and Swarek, has refused to distribute the proceeds owned by Plaintiffs and the members of the Classes and Subclass in violation of its contractual and equitable duties and in violation of the law.

96.     Escambia Operating's refusal has continued on a month-by-month basis as sales proceeds are delivered to Escambia Operating for the benefit of Plaintiffs and the members of the Class and Subclass.  Escambia Operating has made no showing that it will adequately cure its violations, but rather will continue its violations on a

33

monthly basis as it receives proceeds belonging to Plaintiffs and the members of the Classes.

97.    Plaintiff Resource Strategies and members of the Working Interest Owner Class are too few in number to have Escambia Operating contractually removed as Operator of the Subject Wells and the BEC Plant.  Moreover, Resource Strategies and the members of the Working Interest Owner Class only own partial interests in the Subject Wells, meaning that shutting-in the wells to force compliance by Escambia Operating is unlikely.  Even if shutting-in wells were possible, the potential for harm to wellbores or loss of production by drainage from other wells is significant.

98.    Defendants should be enjoined from their continued refusal to distribute proceeds as required by contract and by law.

99.    Without injunctive relief, Plaintiffs and the members of the Classes would be forced to sue Escambia Operating on a monthly basis, each time it receives production revenue and refuses to distribute it.

100.    Plaintiffs and the members of the Classes and Subclass have been irreparably harmed through their continued loss of revenue, through Escambia Operating's improper spending and diverting of revenues, and through the potential severance tax liability, penalties and property liens resulting from Escambia Operating's deficiencies.

101.    Granting an injunction forcing Escambia Operating to comply with its obligations would not harm Escambia Operating as its rights as Operator are clearly defined under the Well JOAs and C&O Agreement.  Moreover, Escambia Operating, as well as prior Operators, have operated the Subject Wells and BEC Plant for decades without significant problem.

## TENTH CAUSE OF ACTION
### Removal of Operator
### (All Classes and Subclass against Escambia Operating)

102.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 101 hereinabove.

103.    Escambia Operating is obligated by the Well JOAs and C&O Agreement to conduct operations in a good and workmanlike manner and to keep each Working Interest Owner fully informed as to all matters of importance concerning operations.

104.    Escambia Operating has operated the Subject Wells and the BEC Plant in a grossly negligent manner by refusing to distribute revenues; by refusing to allow Working Interest Owners to take production in-kind; by wrongfully withholding, transferring, and spending revenues; by operating the Subject Wells and BEC Plant in a manner that is completely contrary to industry accepted good and workmanlike standards; by allowing mechanics and materialmens' liens and ad valorem tax liens to encumber the BEC Plant property and equipment; by incurring unauthorized litigation

expenses and settlements on behalf of the joint account; by failing to make severance tax returns and pay severance taxes; and by failing to properly maintain the BEC Plant.

105.    Escambia Operating's actions further violate Ala. Code § 9-17-1 *et seq.* by failing to timely and properly pay Plaintiffs and all members of the Classes and Subclass, by contributing to waste, and by harming the correlative rights of said interest owners.

106.    If Escambia Operating is not removed as Operator, such deficiencies, waste and harm to correlative rights will likely continue.

107.    Escambia Operating should be replaced with a qualified replacement Operator.  In the alternative, the Court should appoint a qualified receiver to take over operations of the Subject Wells and the BEC Plant.

WHEREFORE, the premises considered, Plaintiffs and the members of the Classes and Subclass pray:

1.    That the Court will enter an injunction requiring Escambia Operating to comply with the payment and accounting terms of the Well JOAs and C&O Agreement and with Ala. Code § 9-17-33.  Said injunction should apply to those acting in concert with Escambia Operating, including Escambia Asset, Blue Diamond, and Swarek, and should prevent said Defendants from charging the joint account with attorneys' fees and the costs incurred in this litigation.

2.      That the Court will declare that Escambia Operating must distribute to Plaintiffs and all members of the Classes and Subclass all of their share of proceeds from the sale of production from Subject Wells since April 1, 2021, less severance taxes; that Resource Strategies and the members of the Take-in-Kind Subclass properly exercised their right to take their portion of production in-kind for the period of April 1, 2021 through July 31, 2021; that Escambia Operating's handling of sales proceeds and payment of expenses since April 1, 2021 is not authorized by the Well JOAs and C&O Agreement; and that Escambia Operating may not charge against the joint account attorneys' fees and costs incurred in litigating this matter.

3.      That the Court will require Defendants to account for the sales proceeds that it has wrongfully withheld, diverted and misused.

4.      That the Court will award damages and pre-judgment interest according to proof for Escambia Operating's and Swarek's breaches of the Well JOAs and C&O Agreement and for Defendants' unjust enrichment of proceeds from the sale of production from the Subject Wells.

5.      That the Court will award damages, including punitive damages, according to proof for Defendants' conversion of production belonging to Resource Strategies and the members of the Take-in-Kind Subclass and for Defendants' violation of Ala. Code §§ 9-17-2 and 9-17-11.

6.      That the Court will award statutory interest against Defendants for their violation of Ala. Code § 9-17-33.

7.      That the Court will order the removal and replacement of Escambia Operating as operator of the Subject Wells and the BEC Plant, or in the alternative, appoint a receiver to operate said properties.

8.      That the Court will pierce the corporate veil to find that Swarek is liable for the wrongful actions of Escambia Operating, Escambia Asset and Blue Diamond.

9.      That the Court will award attorneys' fees, costs and charges from the common fund.

10.     That the Court will award a reasonable award to the class representatives for services in prosecution of this matter.

11.     That the Court will award such other additional and appropriate relief in the premises to which Plaintiffs and the Classes and Subclass may be entitled.


PLAINTIFF DEMANDS TRIAL BY JURY


Respectfully submitted,

ARMBRECHT JACKSON LLP
Post Office Box 290
Mobile, Alabama 36601-0290

Telephone: (251) 405-1300
Facsimile:  (251) 432-6843

By:    */s/ Benjamin Y. Ford*
       Edward A. Dean (DEANE7810)
       ead@ajlaw.com
       Duane A. Graham (GRAHD0422)
       dag@ajlaw.com
       Benjamin Y. Ford (FORDB6432)
       byf@ajlaw.com

**DEFENDANTS TO BE SERVED BY
CERTIFIED MAIL AS FOLLOWS:**

Escambia Operating Co., LLC
c/o Cogency Global, Inc.
2 North Jackson St., Suite 605
Montgomery, AL 36104

Escambia Asset Co., LLC
c/o Cogency Global, Inc.
2 North Jackson St., Suite 605
Montgomery, AL 36104

Blue Diamond Energy, Inc.
c/o Michael Booth
3888 Sardis Church Road
Atmore, AL 36502

Thomas L. Swarek
8 Bayou Place
Gulfport, MS 39503